

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NORTH CENTRAL TEXAS COLLEGE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:04-CV-133 |
| | § | |
| PAT LEDBETTER, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER
GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the court are Plaintiff's Motion for Summary Judgment, filed June 6, 2005, Dkt. # 19, and Plaintiff's Objections to Defendant's Summary Judgment Evidence, filed July 11, 2005, Dkt. # 39. For the reasons stated below, Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART and Plaintiff's Objections to Defendant's Summary Judgment Evidence is DENIED.

**BACKGROUND**[1]

Defendant Pat Ledbetter (Ledbetter) was a professor at Plaintiff North Central Texas College (College) from 1973 to 2004. Because the College did not have a formal tenure system, Ledbetter was employed under a series of one-year contracts, which were renewed successively by the College for thirty years. During the 2003-2004 academic year, controversy arose between Ledbetter and the

---

[1]The College dedicates much time and energy to asserting that this court should apply the "preferred review procedure" first laid out in dicta in *Ferguson v. Thomas*, 430 F.2d 852, 858 (5th Cir. 1970) and described more fully in *Robinson v. Wichita Falls & N. Tex. Comm. Action Corp.* 507 F.2d 245, 255 (5th Cir. 1975). Despite the College's understandably ardent efforts in this regard however, it is clear that this procedure has since been expressly abrogated by the Fifth Circuit. *See Professional Ass'n of Coll. Educ. v. El Paso Co. Comm. Coll. Dist.*, 730 F.2d 258, 265 (5th Cir. 1984) ("Since the Supreme Court decided [*Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274 (1977)], we have properly and consistently followed its lead and have never returned to the *Robinson* rationale."). And it is for this reason, that the College's Objections to Defendant's Summary Judgment Evidence is DENIED.

College's administration and Board of Regents (Board) concerning her and her husband's public opposition to the College President, Ronnie Glasscock's, proposition to build a $6 million performing arts center. Both Ledbetter and her husband, as well as other people in the community, openly opposed the measure, as they felt it would increase the tuition for students at the College while concomitantly providing them with few benefits. The controversy escalated when Ledbetter's husband successfully led a campaign to replace three of the six members of the Board which, under its new composition, bought out the remainder of Glasscock's contract.

In the midst of this controversy however, Glasscock decided not to renew Ledbetter's employment contract for the 2004-2005 academic year and submitted a recommendation to the Board to this effect. In a letter expressing his reasons to Ledbetter, Glasscock stated that it was his opinion that she had "failed to demonstrate the professional ethics and conduct expected of a faculty member at this [College]." Pl.'s Ex. A at Ex. 1. While Ledbetter appealed Glasscock's decision to the Board, her appeal was denied when the Board chose instead to follow Glasscock's recommendation of nonrenewal. The Board based its decision upon Glasscock's assertions that Ledbetter had violated a student's privacy rights by disclosing his grade to another student, disclosed rumors that were damaging to Glasscock, and facilitated a fellow faculty member's absence from a mandatory faculty meeting. Pl.'s Ex. D at 9-22.

After Ledbetter informed the College that she intended to initiate a lawsuit against it for violations of her constitutional right to due process, the College filed the present suit seeking the alternate declaration that Ledbetter "was not denied any due process rights to which she was entitled, if any, under the [Fourteenth Amendment]." Pl.'s Compl. at 4; Pl.'s Mot. for Summ. J. at 9. Ledbetter thereafter made good on her word and filed a counter-complaint against the College. *See*

Def.'s Counter-Compl. In doing so, Ledbetter asserted causes of action against the College for violation of substantive and procedural due process, negligence, defamation, and breach of contract. *Id*. In the motion now under consideration, the College has requested this court to grant summary judgment in its favor and against Ledbetter's claims. For the reasons provided below however, the court believes that, while the gravamen of Ledbetter's case – her claims for substantive and procedural due process – must remain, her residual claims fail to present genuine issues of material fact as required by Rule 56 of the Federal Rules of Civil Procedure.

## Procedural Due Process Claims

Since the Supreme Court's decisions in *Board of Regents v. Roth*, 408 U.S. 578 (1970) and *Perry v. Sindermann*, 408 U.S. 597 (1970), it is settled law that the non-renewal of a non-tenured professor's contract does not invoke the protection of procedural due process unless the professor shows that she had a property interest in the benefit of continued employment. *See, e.g.*, *White v. S. Park Indep. Sch. Dist.*, 693 F.2d 1163, 1166 (5th Cir. 1982); *Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 552 (5th Cir. 1982); *Bradford v. Tarrant County Junior Coll. Dist.*, 492 F.2d 133,135 (5th Cir. 1974). To have a property interest in such benefit, the professor must have more than an abstract need, desire, or unilateral expectation of it. *Roth*, 408 U.S. at 577. She must instead have a "legitimate claim of entitlement" to it deriving from a state or federal statute, municipal ordinance or charter, an express or implied contract, or a contract implied from policies and practices of a particular institution. *Id.*; *see also Cox v. City of Jackson*, 343 F. Supp. 2d 546, 571 (S.D. Miss. 2004).

The operation of these principles is illustrated best by the two Supreme Court cases which established them. The first such case is *Roth*. 408 U.S. 578. In that case, the Supreme Court held

that a non-tenured professor at the University of Wisconsin at Oshkosh did not have a property interest in the renewal of his one-year employment contract where the University, which had employed him for only one year, did have a formal tenure system which he did not qualify for, and where there was no state statute or university rule or policy that secured his interest in re-employment or created a legitimate claim to it. *Id*. at 579. In these circumstances the Court stated, "the [professor] surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." *Id*.

Alternatively, in a companion case to *Roth*, the Court in *Sindermann* held that a non-tenured professor at Odessa Junior College in Texas did have a property interest in the renewal of his employment where the college did not have a formal tenure system, the professor had served at the college with distinction for ten years, and where the college's official faculty guide stated that: "The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work." 408 U.S. at 601. In such a case, the Court stated:

> A teacher . . . who has held his position for a number of years, might be able to show from the circumstances of his service – and from other relevant facts – that he has a legitimate claim of entitlement to job tenure. Just as this Court has found there to be a 'common law of a particular industry or of a particular plant' that may supplement a collective-bargaining agreement, [citations omitted], so there may be an 'unwritten common law' in a particular university that certain employees shall have the equivalent of tenure. *This is particularly likely in a college or university . . . that has no explicit tenure system even for senior members of its faculty, but that nonetheless may have created such a system in practice.*

*Id*. at 603 (emphasis added).

While the present case appears to reside between *Roth* and *Sindermann*, the court believes that, based on the record before the court, the situation presented is more like that in *Sindermann* than in *Roth*. As an initial matter, like the college in *Sindermann* and unlike the university in *Roth*, the College here has no explicit tenure system even for senior members of its faculty. Pl.'s Ex. A-26 ("The Board may decide by vote or inaction not to offer any employee further employment with the District beyond the term of the contract *for any reason or no reason*.") (NCTC Board Policies) (emphasis added). Similarly, like the professor in *Sindermann* and unlike the professor in *Roth*, Ledbetter had served at the College with distinction for a significant period of time, indeed three times that served by the professor in *Sindermann*. Def.'s Ex. 1 at 1. Also as in *Sindermann* and not in *Roth*, the court here finds that the College fostered an "unwritten common law" that certain employees shall have the equivalent of tenure. This finding is informed by a statement made by the College that "[t]ermination and non-renewal procedures *must* contain adequate safeguards for protection of academic freedom" and a statement by Glasscock and the College's Deans that "they believe the evaluation process offers faculty members protection beyond the one-year term." Def.'s Ex. 1 at App. 38; Ex. LLL, App. 194-95 (1999-2000 Institutional Self-Study Report). It is these commonalities with *Sindermann* then, that have persuaded this court that, at the very least, there is a genuine issue of material fact concerning whether or not Ledbetter had acquired a property interest in having her employment contract renewed for the 2004-2005 academic year.

In making this observation however, the court is not unaware of the Fifth Circuit's reluctance to recognize similar property interests since its seminal decision in *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970). *See, e.g.*, *White v. S. Park Indep. Sch. Dist.*, 693 F.2d 1163 (5th Cir. 1982) (finding that the professor had not demonstrated a property interest in continued employment); *Hillis*

*v. Stephen F. Austin State Univ.*, 665 F.2d 547 (5th Cir. 1982) (same); *Bradford v. Tarrant County Junior Coll. Dist.*, 492 F.2d 133 (5th Cir. 1974) (same); *Skidmore v. Shamrock Indep. Sch. Dist.*, 464 F.2d 605 (5th Cir. 1972) (same); *Singh v. Lamar Univ.*, 635 F. Supp. 737 (E.D. Tex. 1986) (same); *LaVerne v. Univ. of Tex.*, 611 F. Supp. 66 (S.D. Tex. 1985); *Woodward v. Hereford Indep. Sch. Dist.*, 421 F. Supp. 93 (N.D. Tex. 1976); *Chambliss v. Foote*, 421 F. Supp. 12 (E.D. La. 1976) (same). *But see Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679 (5th Cir. 1986) (upholding district court's finding that professor did have a property interest in continued employment); *Lucas v. Chapman*, 430 F.2d 945 (5th Cir. 1970) (finding that a professor's "long employment in a continuing relationship through the use of renewals of short-term contracts was sufficient to give him the necessary expectancy of re-employment that constituted a protectible interest"); *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir. 1970) (holding that a non-tenured professor may acquire a protectible property interest in continued employment if he has a reasonable expectation of the same); *Yates v. Bd. of Regents*, 654 F. Supp. 979 (E.D. Tex. 1987) (finding that the court could "not rule as a matter of law that plaintiff had no property interest in continued employment").

Every case is unique, and this case is no different. First of all, Ledbetter's service at the College was longer than the service of any professor in any of the cases denying the existence of a property interest. Moreover, the evidence before the court reflects that Ledbetter was held in the highest esteem by her superiors, colleagues and students. Indeed, until she and her husband stated opposition to Glasscock's performing arts center proposal, her record at the College reflects only the most exemplary and dedicated service to both the College and its students. And even when she and her husband did state their opposition to Glasscock's proposal, such opposition was grounded in Ledbetter's belief that it was not in the students' best interest.

For purposes of the procedural due process inquiry, it must be determined whether the procedures employed by the College were sufficient to cure any perceived constitutional violation. Under the Fourteenth Amendment, a professor with a property interest in continued employment is entitled to the following minimum due process rights in connection with the termination of his services: (1) to be advised of the cause of the termination in sufficient detail to permit him to show any error that may exist; (2) to be advised of the names and nature of the testimony of the witnesses against him; (3) to be afforded a meaningful opportunity to be heard in his own defense within a reasonable time and (4) before a tribunal that possesses some expertise and an apparent impartiality toward the charges. *Wells v. Dallas Ind. Sch. Dist.*, 793 F.2d 679, 682 (5th Cir. 1986) (citing *Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1228 (5th Cir. 1985)).

In this case, while Ledbetter did avail herself of the grievance process established by the College, the court believes that there is nonetheless a genuine issue of material fact regarding whether the procedures she was afforded were constitutionally sufficient to protect her against a deprivation of her alleged property interest in continued employment. This belief is informed by the court's finding that there is a genuine issue of material fact regarding whether the Board, which supported Glasscock's decision, exhibited the type of "apparent impartiality toward the charges" that is required. For instance, during the Board's deliberations following Ledbetter's hearing, one Board member stated that Ledbetter had been a "disruptive force" and had "polarized" employees. Def.'s Ex. 22 at 15:12-19; Ex. 1 at App. 34. Another described the hearing as a "combat of sorts" and grieved that the College was on a "public chopping block.." Moreover, throughout Ledbetter's husband's campaign against the Board, many of the Board members wrote heated letters to the local newspaper. Taken together then, the court finds that the controversial atmosphere attending both

Ledbetter's hearing and her husband's campaign to dislodge certain members of the Board are sufficient to create a genuine issue of material fact with respect to whether Ledbetter was afforded procedural due process under the Fourteenth Amendment, assuming, of course, that she is able to prove at trial that she indeed had a property interest in her job.

**Substantive Due Process**

For at least a half-century now, the Supreme Court has made it clear that even if a person does not have a protected interest in continued employment and even though the government may terminate his employment, it may not do so on a basis that infringes his constitutionally protected interests – especially his interest in freedom of speech. *See, e.g.*, *Sindermann*, 408 U.S. at 598; *Pickering v. Bd. of Education*, 391 U.S. 563 (1968); *Keyishian v. Board of Regents*, 385 U.S. 589 (1967); *Shelton v. Tucker*, 364 U.S. 479 (1960). Indeed, on at least three occasions now, the Supreme Court has specifically held that the non-renewal of a non-tenured teacher's employment contract by a public school may not be predicated on the teacher's exercise of First and Fourteenth Amendment rights. *See Sindermann*, 408 U.S. at 599; *Keyishian*, 385 U.S. 589; *Shelton*, 364 U.S. 479. The rationale for this principle was expressed perhaps best by the Court in *Keyishian*:

> Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned. That freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom. 'The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.' [citing *Shelton*, 364 U.S. at 487]. The classroom is peculiarly the 'marketplace of ideas.' The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth 'out of a multitude of tongues, [rather] than through any kind of authoritative selection.'

385 U.S. at 603.

At the same time however, the Court has recognized the need for courts to balance the

professor's interest in this regard against the interest of a state school, as an employer, in promoting the efficiency of the public services it performs. *See Pickering*, 391 U.S. at 568. To reconcile these countervailing interests, the courts in this circuit have fashioned a three-part test to determine whether a professor in a public school has established a First Amendment claim. Under this test, the court must determine whether: (1) the speech at issue involves a matter of public concern; (2) the professor's interest in commenting upon matters of public concern outweighs the school's interest in promoting the efficiency of the public service it performs;[2] and (3) the professor's speech motivated the school's decision to take adverse employment action. *Ibarra v. Houston Indep. Sch. Dist.*, 84 F. Supp. 2d 825, 832 (S.D. Tex. 1999) (citing *Bd. of County Comm'rs. v. Umbehr*, 518 U.S. 668 (1996); *Connick v. Myers*, 461 U.S. 138 (1983); *Pickering*, 391 U.S. 563; *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 460 (5th Cir. 1990)).

In this case, the court has determined that there is a genuine issue of material fact with respect to whether the College violated Ledbetter's rights under the First and Fourteenth Amendments. This determination is informed by three findings. First, the court finds that the speech at issue in this case, that of Ledbetter's opposition to the College's expenditure of $6 million to build a performing arts center, is self-evidently a matter of public concern. Second, the court finds that the College has failed to meet its burden under the second element of the abovementioned test of showing that its interests as an employer outweighed Ledbetter's interest in opposing the said performing arts center. Finally and most significantly, the court finds that there is a genuine issue of material fact regarding whether Ledbetter's speech motivated the College's decision not to renew her employment contract

---

[2]The College bears the burden of coming forth with evidence on this point. *Ibarra*, 84 F. Supp. 2d at 832 n1 (citing *Thompson v. City of Starkville*, 901 F.2d 456, 461 n.4 (5th Cir. 1990)).

for the 2004-2005 academic year. This decision, as stated earlier, was predicated on Glasscock's assertions that Ledbetter had violated a student's privacy rights by disclosing his grade to another student, disclosed rumors that were damaging to Glasscock, and facilitated a fellow faculty member's absence from a mandatory faculty meeting. A closer examination of the evidence presented by Ledbetter however, shows that Glasscock himself admitted to the Board that he too had violated students' privacy rights by disclosing students grades to others. Pl.'s Ex. 20 at 176 (containing Glasscock's admission that he too had "probably" disclosed students grades without their permission "inadvertently at sometime in [his] career"). The record also contains affidavits by the faculty members to the effect that Ledbetter had neither disclosed any purported rumors about Glasscock nor facilitated a fellow faculty member's absence from a mandatory faculty meeting. It is in light of this evidence then, that the court is left to conclude that, at the very least, there is a genuine issue of material fact with regard to whether the College violated Ledbetter's rights under the First Amendment by not renewing her employment contract because she had exercised constitutionally protected speech.

### Ledbetter's Residual Claims

Beyond the claims discussed above, the court finds that Ledbetter failed to meet her burden under Rule 56(e) of the Federal Rules of Civil Procedure of setting forth such facts showing that there is a genuine issue for trial on each of her remaining claims. Indeed, even a cursory review of Ledbetter's response to the College's Motion for Summary Judgment, demonstrates the insignificance placed by Ledbetter herself on these untenable causes of action.

### CONCLUSION

For the reasons set forth above, the court is of the opinion that Plaintiff's Motion for

Summary Judgment should be GRANTED IN PART and DENIED IN PART and that Plaintiff's Objections to Defendant's Summary Judgment Evidence should be DENIED. The only claims that accordingly remain, are those from both parties, concerning the College's alleged violation of Ledbetter's substantive and procedural due process rights.

Having made this ruling, counsel for both sides shall now confer in an effort to agree on a new scheduling order restarting discovery, scheduling mediation, and designating expert witnesses, all of which have been stayed pending the court's resolution of this motion for summary judgment. Counsel shall file with the court a proposed scheduling order no later than April 20, 2006.

SO ORDERED.

**SIGNED this the 30th day of March, 2006.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE